1-5-1-2-6-1 and 1-5-1-2-6-7 U.S. v. Abraham Walker-Couvertier and U.S. v. Dean Lugo-Diaz Good morning, Ms. Coors. Good morning. I'd like to ask if I could reserve one minute for rebuttal. You may. Thank you. Thank you for hearing this case. Your Honors, the jury instruction in this case was so bad. It was so bad. Let's look at what the judge said. He said, so Dean Lugo's form does not include heroin. Don't look for it because the court dismissed that charge. All right. The court determined that he, that the proof did not find sufficiency. Saying that there is insufficient proof as to one charge in effect implied, well, it more than implies. It actually tells the jury that there is sufficient proof on the remaining charges. And does it really say that or does it say there's sufficient proof that you are being given the question as opposed to the court deciding this? I don't think a reasonable juror would have understood it the second way, not the first way. I disagree respectfully, Your Honor. Why? Because that's the only logical interpretation. As a juror, if a judge tells you there's insufficient evidence as to count A, that means there's sufficient evidence to count B because Something's wrong with the law. Let me finish this thought and I will get right back to that. But it does imply that because if there were insufficient evidence as to count B, well, gee, the judge would have told us so because he told us that as to count A. No, but it does not negate the construction sufficient for you to consider it. That seems to me a logical meaning of what Judge Dominguez said. And your argument not only has to meet the obstacle that there are at a minimum two alternative interpretations of what the judge said, but that the defense could have cured that ambiguity by simply objecting or requesting some curative instruction and neither one of those occurred. So we've got this claim on plain error review. And to me, Your Honor, it is plain. Plain as day. You were talking about ledgers who don't know the distinction between what is sufficient evidence to give a case to a jury and what is not. All they hear is that there's insufficient evidence as to one, not as to the other. And as part of my preparation But the judge then goes on to instruct them on burden of proof. No, Your Honor, he doesn't. He instructed on burden of proof at the very beginning. This was one of the last things the jurors heard before they went into deliberations. And on the issue of the distinction between us as lawyers understanding what the judge meant and a lay jury not getting, not being told of that distinction, let me tell you, I took an informal poll of non-lawyers posed with this situation. If you were a jury and listened to a case and at the end of it all the judge said there's insufficient evidence as to count one, would you take that to mean there was evidence as to count two? And they 100% said yes. What else could that possibly mean? And what significance are we supposed to attach to an informal poll that you've taken ex parte without any proof on the record? It's just to show that there is a difference between us as lawyers and non-lawyers. It strikes me as an argument made with a special sense of effrontery by a lawyer who is arguing in the same breath that the prosecutor has committed a great sin by saying that there were boatloads of evidence that they didn't present. That occurred too, Your Honor. And I don't mean to be a little... I suggest you stick to the record. There is... We've got enough facts to deal with here without presenting any. There is a distinction between lawyers understanding what the judge said and lay people. Now there was an instruction in another circuit, okay? There was a virtually identical flawed instruction where the judge said there is insufficient evidence as to count this. But in that case, the judge immediately followed up, immediately, with a strong curative instruction saying that they were not to make any inference as to the remaining charges. We don't have that here. Did he request an instruction? The defense did not, and shame on him. But also, Judge, this is an experienced district court judge. He should have known. You just stop. You just say this count is no longer before you. You're not to consider it, period. There was no reason to get into the sufficiency of the evidence. And that's what makes it fatal. Actually, I would have thought that one might understand this as, look, the government overreached a bit on count one. It's a sort of anti-prosecution statement that tends to help the defense. Perhaps the government has overreached on the remaining counts as well. After all, they did it once, and the judge has told us so. Not at all, Your Honor. My sister counsel will be addressing the improper closing arguments. That's quite a different matter. It is, but they're combined. They're related. Because what you have here is a prosecutor telling the jury that he has boatloads of evidence, boatloads. And then you have a judge telling the jury there's insufficient evidence as to this one count, but sufficient evidence as to this other count. So what's a jury to think, oh, well, gee, maybe the judge knows about all that other evidence, and that's why there's sufficient. This was really bad, and I would say that the judge will never make this mistake again, but he made it here. And you have Mr. Lugo, a defendant with clean record, no record, sentenced to 10 years in prison on an instruction that implies sufficient evidence. Thank you. Good morning. Good morning. Please support Inez McGillian for Mr. Walker. If I could reserve one minute for rebuttal. You may. Mr. Walker raises five issues on appeal, and he joins in Mr. Lugo-Diaz's jury instruction argument. First, he argues that the disqualification of a substantial majority of Puerto Ricans from federal jury service because they don't speak English well enough is structural error under both the Fifth and the Sixth Amendments. Second, he argues that if the ---- Let's talk about that first argument. Yes. Isn't that foreclosed by our circuit precedent? I don't believe it is. The law of the circuit requires binding precedent. Yeah. And I've read all of these cases closely, and very few of them have any analysis whatsoever. But it's the holding, not the analysis, that binds us. If you were free to disregard, if we as a panel were free to disregard our precedent merely because someone offered a different take on the same point that had already been rejected, then the law of the circuit doctrine would be a shambles. Well, here's why I think this panel can actually address this issue. First, because Ben-Humar expressly left open the question of whether accommodations could take care of this cross-sectional requirement. DuPont-Otero appeared to be applying ---- Don't go so fast. Okay. Was there any request in the district court for accommodation or any suggestion by counsel as to how the court with modern technology might accommodate jurors who are not proficient in English? So we have no record on that at all? We don't. But this type of error, both the Sixth Amendment error and the Fifth Amendment error, I believe are structural. I don't think that every Sixth Amendment cross-section error is structural. Okay. You just said regardless of accommodation, it's error. Therefore, why are you making an accommodation argument? No. What I'm saying is that accommodation could relieve and eliminate the error. And in DuPont-Otero ---- And without any evidence or any requests being made to the district court to try some accommodations. There is no record of that. But because this is structural, it can be raised for the first time on appeal. No, no, no. Well, the Supreme Court has actually held in the larger ---- And your labeling it structural doesn't help in the real world. Well, my reading of a lono is that structural error is excused from plain error review. And while not every cross-section error is structural because it may only affect a single jury, this is a systemic problem. Every jury in Puerto Rico excludes 80 percent. And that has been the case ever since this statute was enacted. And we have repeatedly rejected the argument you have made. The law of the case requires us to adhere to our prior precedent. And in the absence of giving us any reason because it wasn't raised before the trial court, how can we possibly rule in your favor? Well, for structural error, I believe that it is the government's duty to demonstrate that under narrow tailoring that an accommodation could get rid of this very serious structural error, every single defendant in Puerto Rico is deprived of a fair cross-section. What are the implications of your position on the Jones Act, which requires that proceedings before the federal court in Puerto Rico be done in English? Well, an accommodation could actually serve and further that purpose because if every juror were allowed an interpreter, it would just require an earpiece in every juror's ear. The U.N. is able to do it. The E.U. is able to do it. And it is a simple technological advancement that would actually make juries fair in Puerto Rico. Are you going to talk about boatloads? Let's talk about boatloads of evidence because the arguments in this case made my eyes pop out, and I hope you don't consider that improper vouching for the strength of my arguments on this issue. But that statement, it was so prejudicial, particularly because this case turned on the credibility of cooperating witnesses. There were no boatloads of evidence introduced in this case. I don't see how this comment could possibly have been remedied even by a curative instruction had one been given, and there was none. The other arguments were very prejudicial as well. In this court, I urge you to consider all of them together because in combination they amount to a constitutional error. It tainted the jury's verdict. It basically deprived counsel of the ability to confront witnesses. The prosecutor was acting as a witness in this case when he referred to boatloads of evidence outside the record. Are you going to talk at all about the initial stop? I'm happy to rest on my brief for that particular issue. Okay. But it is an issue, and it is a preserved issue, and I think the government is incorrect when... What do you mean it is a preserved issue? Rule 12E requires the issue be raised pre-trial. It wasn't raised. I think it's a waived issue, or I think there's at least a good argument that it's a waived issue. The government may assert that argument, but I think the waiver issue is dead because it is the district court's prerogative to deem the issue waived. Sorry, our case law says even if the district court ignores your waiver and goes on and makes a ruling on it, that doesn't mean that the appellate court will find that you didn't waive the issue by failing to present it at the time the rules require it. So you're asking us to overrule that precedent as well. I'm not. I'm actually arguing that... I see that my time is up, and if I could just briefly conclude. I urge that the government here has not demonstrated that reasonable accommodations could permit defendants in Puerto Rico District Court to have a fair cross-section deciding their cases. And I urge the court to grant Mr. Walker a new trial on all the other issues raised in his brief. Thank you. Ms. Tessier? May it please the court, Phumala Tessier for the United States. I'd like to begin, if I may, with the defendant's assertions of reversible plain error in the government's statements at closing argument. I think the cleanest way for the court to address these arguments is on the third prong of plain error review, because the defendants do not meet their burden, which this court has described as a heavy one, of establishing that any errors affected their substantial rights. So does the government concede that this remark was improper, and clearly so? I think that it is at best a close call as to whether... That doesn't answer my question. Does the government concede that this remark was improper? I mean, it seems very hard to justify. I think it depends on how you interpret what the government was saying. How can you interpret it otherwise? We could have presented boatloads of other evidence, but we elected not to. Right in context, I think the government was trying to say that there was evidence of the conspiracy as a whole, which was effectively uncontroversial. The government may be trying to say it was the twelfth night of Christmas, but I'm talking about what the government actually said. And I think if it is right to say that there's other evidence inculpating the defendant, that is certainly correct. So the government doesn't even concede error here? I'm trying to take the prongs of plain error review one by one. We start with, was there an error? Second, was that error obvious? I think Your Honor is interpreting the statement to say that there was evidence inculpating the defendant, and certainly that was wrong. It was certainly improper of the government to say what it said, because the government shouldn't come anywhere close to the line. Counsel, you know, you have a series of very seasoned judges here who have heard cases from Puerto Rico for decades now. And the problem of improper closing arguments from the U.S. Attorney's Office and the Justice Department in Puerto Rico is a recurring problem. And for you to stand there and say, no, we don't concede it's error, makes us even more concerned about the improper behavior of the office that you're now representing. It may be that it's, if you will, harmless error, but we certainly don't want to encourage your office to keep doing these things which are improper and should have been obvious to you are improper. So what training is going on in your office to see that your attorneys do not, in fact, continue to repeat these errors? Yes, Your Honor. We take the court's concerns very seriously. And I spoke to the U.S. Attorney's Office exactly about training yesterday. And my understanding is that there is training scheduled for next month on the propriety of status. We have been making these statements for a long time and calling them harmless errors. Maybe it's time we stopped calling them harmless. I think the court might do that if this were a harmless error case. It's not a harmless error case. It's up before the court on plain error review. And I think that the standard of review could make a difference here in the sense that if there had been an objection, I think the AUSA would likely have clarified what he meant to say. Now, it is, of course, the court. The horse was already out of the barn. That's correct, Your Honor. But the court could have admonished the AUSA about his statements, struck the statement from the record, issued a curative instruction. That has been found to be sufficient in any number of cases. In Potter, for example, which is a case at defendant's site, there were allusions to extra record evidence expressly inculpating the defendant. And in that case, the evidence, the defense counsel objected. There was a curative instruction. And the court found that the curative instruction was sufficient, even though the evidence was much closer in that case. In fact, those particular defendants had been tried before, had been acquitted on several counts, and the jury had hung on the remaining counts. You know, fine. But to take up Judge Torea's point, what will it take for your office to stop making arguments like this? We have 20, 30 years of cases making this point over and over and over again. Yes, Your Honor. And as I noted, we take the court's concerns very seriously. No, apparently you don't. Because you have it up to now. Well, I spoke to the U.S. Attorney's Office and the AUSA who prosecuted this case, and they acknowledged that they should not have made the statements. And then you weren't willing to stand up here in front of us as a representative of the Justice Department and make the concession that the office made to you? Well, I apologize, Your Honor. Perhaps I was trying to be too subtle in my argument, and I apologize for that. Certainly, I think we should. Dishonest might be another word for it. I apologize, Your Honor. I truly did not mean to be dishonest. I don't think that the statements should have been made. And that's because I think the government's responsibility is to stay as far away from the line as it possibly can. Now, I think it is the position that we took in our brief was that I think it is you have to read the statement in context. And what I think the AUSA was trying to say was slightly different from what I think was actually said. That was the point that I was trying to make. But we agree because even the statement that he was trying to make was close to the line. He shouldn't have said what he did. But, again, as to the court's resolution on this particular case, even if you find that there was error that was plain or obvious, the evidence against the defendants here was really overwhelming. Mr. Lugo-Diaz was observed dealing drugs on three separate occasions on video. Mr. Walker-Couvertier was caught exchanging a bag of crack with another drug dealer. And both defendants were identified by their co-conspirators as members of the conspiracy. And in light of that overwhelming evidence, the defendants haven't met their burden on the third prong. If the court has no further questions on the closing argument issue, I would also like to note that as to the English language proficiency argument, that if the defendants had raised this issue in district court, there may have been a discussion and a record for this court to review as to whether or not simultaneous translation would be sufficient. I think that there are issues with simultaneous translation. Amongst others, you have more than one record of the case. You have the Spanish language translation that some of the jurors are using. You have the English court that is the actual record. And so it's not clear that that would satisfy the purposes of having an English language. But in any event, this court doesn't have that record to review because the issue was not raised below. I'd like to know if there is evidence in the record of this other defendant, Mr. Lugo, having participated in all three of the... All three of the housing projects, Your Honor. Right. There was not evidence of his participation at those projects. There was evidence of his knowledge of the drug dealing at those projects. That's not enough. Just knowledge? That's not enough to find, perhaps to find at sentencing, that he was responsible for the drug quantities at the other projects. But in order to find that there was... The defendant's charge here is that there was multiple conspiracies, not a Therefore, I'd like to know what evidence there is of Lugo having participated in the activities in the other two housing projects. Well, Your Honor, I don't believe the law requires... I know that if you're a member of a conspiracy, you're responsible for all the acts of the conspiracy. That's correct. But I would like to know how he is connected with the overall conspiracy. Well, because the individuals with whom he dealt drugs at the El Faro housing project were also dealing drugs on behalf of the Oppenheimer conspiracy at the other housing projects. And he knew about those individuals' other participation. For example, Zeus testified that he and Mr. Lugo Diaz discussed the drug dealing operations at the other housing projects. And so while he may not have himself gone to the other housing projects in particular, that does not mean he is not a member of the entire conspiracy that is dealing drugs both at that housing project and the housing project where he was dealing drugs. And, of course, a sentencing to Lugo Diaz was only held responsible for the drugs at the El Faro housing project. I also note as to the multiple versus single conspiracy, the jury was expressly instructed that they had to find the agreement charged in the agreement, and not some other agreement. For example, an agreement with just one other person to deal drugs at El Faro. And that jury instruction is one that has been blessed by this court in Miami and in Balthazar as dealing with the issue of multiple versus single conspiracies. And, of course, again, this is up before this court on plain error review. The court has also said that, and this, of course, relates both to the argument as to the count to dismissal and the multiple conspiracies instruction, that the high hurdle of plain error review is nowhere higher than in the context of jury instructions. If this court has no further questions, I would, again, like to assure the court I will be discussing the issue of the closing arguments again, and that this will be discussed at the June training in the U.S. Attorney's Office in Puerto Rico about what not to do so that we're not putting the court in the position of having to face with a tough decision of whether or not and how much should merge that government. I'd like to request that the U.S. Attorney from Puerto Rico send us a letter after the argument confirming what you've just said. Confirming that the training on these points of improper closing argument. Yes, Your Honor. Thank you. Thank you. Just a few quick things. Number one, I would like to reiterate that especially the combined effect of the boatloads of evidence and the implication of sufficient evidence combined cries out for relief. Number two, on the issue of the systemic exclusion of non-English speaking people from juries, if this court is inclined to address that issue, it is not a bar that there was no objection at trial. This circuit recently, within three years, addressed another systemic problem in Puerto Rico of the closed courtroom excluding family members during jury selection. There had been no objection at trial because that was just the practice. Nobody even thought to object that was the practice. I know, but when that was raised on appeal, I was on that panel and we found that there was plain error there. And you reversed. Yes. On the basis of plain error. Right.  I didn't argue that issue, but I was there in Puerto Rico. So it's not a total bar if this court is inclined to address that other issue. Thank you. Thank you. And just very briefly, I will respond to my opposing sister counsel's arguments. The closing argument errors did affect substantial rights. And I outlined those in my brief, but I'll repeat them here. They very likely affected conspiracy-wide drug quantity findings, the individual possession quantity findings, and especially because these defendants were convicted primarily on cooperating witness testimony that could have been disbelieved. The bolstering arguments certainly may have affected the verdict. Even if you don't agree that there was an effect on substantial rights, Olano says that if there's an effect on the fairness and integrity and reputation of judicial proceedings, reversal is also appropriate. That's the fourth prong of plain error. It doesn't replace the third. It's not an alternative. No. It's the fourth prong. I agree. But if I may briefly conclude, the case law in this circuit does permit reversal in order to deter future misconduct. If I could also suggest that if this court feels that it is not able to overturn its precedent, that there may be a suggestion for rehearing en banc, and it's something that the defendants are likely to pursue if it doesn't come from this panel. Thank you very much. We'll take a brief recess. All rise. Thank you. Thank you.